Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, Fifth District, State of Illinois is now in session. The Honorable Justice Wharton presiding along with Justice Barbaros and Justice Cates. The first case this morning is number 520266, People v. Rowell. Arguing for the appellant, Travarious Rowell, is Alex Munches. Arguing for the appellate, People of the State of Illinois is Victoria Joseph. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Are you both prepared to proceed? Yes, Your Honor. Mr. Munches, you may proceed. Thank you. May it please the court, my name is Alexander Munches. I'm with the Office of the State Appellate Defender and I represent Travarious M. Rowell. Mr. Rowell pleaded guilty at the very end of 2012. He filed a post-conviction petition soon after in 2013. And today in 2022, his case is once again before this court. We are here on appeal from another third stage evidentiary hearing. In a prior appeal, this court found that Gwinnett Council had provided unreasonable assistance by failing to litigate at the first hearing, one of the issues appearing in Mr. Rowell's which is whether plea counsel provided ineffective assistance by failing to timely communicate Mr. Rowell's acceptance of an eight-year plea offer. The issue before this court today is whether the circuit court manifestly erred by denying Mr. Rowell relief. A review of all the evidence in this matter should lead this court to conclude that the decision by the circuit court was not reasonable. At the outset, this court should note how narrow this issue is really legally and factually. There are four potential witnesses. That's Mr. Rowell, Lisa McCoy, plea counsel, and the trial prosecutor A.S.A. Hamrock. The court below heard direct evidence and circumstantial evidence about this last plea offer. And of the direct evidence, that evidence only supported relief. Both Mr. Rowell and Lisa McCoy were called a conversation off the record with plea counsel about two months before the plea hearing. Both of those witnesses told the court at that hearing or that meeting, they told counsel, if that's the best you can do, I accept. And that was about the eight-year plea offer that had been offered. Per Lisa McCoy, counsel then explained to Traveris that that was the best you could do. And then per Traveris, he testified he expected to enter that and accept that plea offer at the next hearing. Notably, no direct evidence undermined this testimony. A.S.A. Hamrock took the stand as a witness for Mr. Rowell and he admitted that he had no independent recollection of this case really. Years and years have gone by. Also, at that hearing, the state called witnesses. The state did not call plea counsel to rebut this testimony from Traveris or Lisa. Further, your honors, circumstantial evidence also supported relief. For example, plea counsel's suspension from the practice of law was circumstantial evidence supporting Traveris' version of events. Counsel, could I interrupt you? Yes. Okay. I'm not aware of the reason for the suspension, but was it in any way related to a matter similar to what it's attempted to be used to basically impeach his representation in this case? Yes. I believe counsel was suspended for failing to do some promised action on behalf of his client. This is exactly the situation we have that Traveris is talking about, where Traveris told counsel in this off-the-record conversation, I want to accept that eight-year plea offer. Two months go by, he shows back up in court, and per his testimony, he's speaking with counsel and he says, what happened to the eight-year offer? Counsel told him that's gone, they went up, it's 15 now, do this or the trial. So Traveris was stuck in that position, and as the record shows, he pleaded guilty. So that is just one example of circumstantial evidence. There's even more circumstantial evidence that is perhaps a little bit more complicated, but should lead this court to draw an adverse inference against the state. Now, at the top of this, I want to say, to be sure, petitioners like Mr. Roll are entitled to fair proceedings, not perfect ones. That's not in integrity of the proceedings. In this case, that only an adverse inference against the state could begin to restore what has been lost or destroyed. Let's take this from the top. The state lost or destroyed the Roll trial file. This is shocking for a number of reasons. First, this guilty plea occurred in 2012. In 2013 is when post-conviction proceedings began. In 2015, there was the first hearing, which this claim appeared in the petition for. In 2018, this court reversed and remanded. In 2019 is when the state first announced that it lost or destroyed this trial file. And now in 2022, the state argues in its brief that Mr. Roll needed to present written evidence. That's a shocking sequence of events, your honors. Second, it's not just about losing the trial file. The state also called an admitted liar to the stand. This liar was former post-conviction counsel. Counsel took the stand, and he had previously been found to have provided unreasonable assistance. But he took the stand anyway, and he admitted that despite filing a 651c certificate that he had made all necessary amendments to Mr. Roll's claims, that he had never even attempted to subpoena a plea counsel. That is, counsel took the stand under oath and contradicted his prior certification to the circuit court. So the state losing the trial file has undermined this court's prior mandate to have an evidentiary hearing on this issue. The state's decision to call former post-conviction counsel undermines the integrity of the prior proceedings before the circuit court. And then on top of all of that, we have former post-conviction counsel testifying to the content of an off-the-record conversation with the trial prosecutor that occurred before the first evidentiary hearing. So this testimony, the content of which, would violate People v. Blue. This is hearsay content that, first of all, the trial prosecutor didn't recall himself. And then second of all, was made at a time when the prosecutor was a necessary fact witness and also an advocate in these proceedings. Does it matter that each of them was retired at this time? So, that currently that A.I. C. Hamrock at that second proceeding was retired? Yes. I think no, because what the content of the hearsay is about what was said in 2015. And in 2015, Hamrock was in fact litigating the post-conviction petition. And in 2010 through 12, he had in fact prosecuted this case. So those are the two most important dates for this Blue violation. And again, this is entirely gratuitous. The state didn't need to call any witnesses. The state presumably prepared this witness, found out that he had, that he was going to say that he had violated his, the certificates, certification to the circuit court, called him anyway, and then had him testify to a conversation that A.I. C. Hamrock didn't recall at all, and that would otherwise violate People v. Blue. These are errors that touch at the integrity of these proceedings. And that's why this court should notice them in combination. So, I would say that given all this evidence, both direct and circumstantial, and given many reasons from the state's actions to draw an adverse inference, this court should conclude the denial of the petition in this case was not reasonable. I just want to say Mr. Roll's current projected parole date per the IDOC website is quite close. It's January 12, 2023. That means that nearly 10 years have passed since he entered his plea, and that nearly 10 years have passed since he first filed this petition. Your Honors, I think in many ways, this appeal shows that when both counsel and the state work against you, securing post-conviction relief is not easy. It takes a spirit tempered to endure. Mr. Roll has shown that he has that. He just asked that this court finally set straight his course, allow him to come home consistent with the plea offer he accepted long ago. If there are no other questions, I would just say that as a remedy, this court should reverse that denial, vacate Mr. Roll's conviction, and remand so the state can reoffer him a term of eight years imprisonment. Thank you. Any questions, Justice Capes? Why would we vacate his conviction if we're remanding his petition? I think that would be a necessary first step for the state to then be in a position to reoffer the lapsed offer. Aren't we looking at the post-conviction petition here, not the underlying plea? Right. I think that if this court finds that plea counsel provided ineffective assistance by allowing this offer to lapse, then the Post-Conviction Hearing Act, which allows a broad array of remedies consistent with what justice requires and consistent with federal and state Supreme Court precedent, would then set the parties back into the start position. And part of the remedy consistent with Missouri v. Frye and the other cases we cited in the briefing would be that the state would have to offer the eight-year offer again. Well, isn't the eight-year offer still a question of fact? I'm a little confused on that. So the question of fact, yeah, so Mr. Roll needed to prove by preponderance of the evidence that this plea offer was made, that he told counsel that he accepted it, that the state would have honored it had it been brought into court, and that the circuit court would have honored the plea. That's consistent with Missouri v. Frye. And the testimony below established all those elements. Roll and McCoy testified that this eight-year offer was made. They accepted it while talking to counsel. And A.S.A. Hamrock testified that if that was the offer that was made, he would have done his thing. And he believes that, you know, it's close to 100% that the court would have gone along with that plea deal. So those are all the facts that the testimony established. And thus, you know, we're now in the position where we're asking this court to grant Mr. Roll the ultimate post-conviction relief he's requested. Justice Barberis? Nothing. Thank you. Ms. Joseph, you may proceed. Good morning, Your Honors. I am Victoria Joseph for the people of the state of Illinois. May it please the court and counsel. Counsel is correct. We are looking at the procedural posture of this being a second, third-stage evidentiary hearing after this court remanded the cause because post-conviction counsel Barrel failed to address one of the claims in the defendant's amended post-conviction petition. The remanded hearing tells us exactly why Barrel didn't address this claim at the earlier evidentiary hearing. In questioning A.S.A., former A.S.A. Hamrock before the hearing, whether there was an eight-year offer that was made, Hamrock answered no. If Hamrock had told Barrel there was an eight-year offer, Barrel would have called him to testify. But for all the concerns about Barrel being ethically dubious, his pursuit of a meritless claim that he learned the day of the hearing and putting the defendant's own credibility substantially at risk by calling Hamrock to testify would have been an ethically dubious act and in violation of Supreme Court Rule 137. Had Barrel wanted to call Hamrock to the stand at the previous hearing, he could have done so. This would not have been violated of the adverse witness rule, as another A.S.A. could have been brought in to then handle the hearing. It's complete speculation that there was any violation of that rule that would have occurred had he testified at that hearing. Also, the hearing... Excuse me. May I ask a question? Are we to draw an adverse inference from the fact that the state has now lost the file? The people acknowledge that an adverse inference can be made. We acknowledge that people were supposed to have maintained its records in accordance with statute and their policy for maintaining records. At the same time, this isn't a case where the trial court couldn't figure out what happened. It had sufficient information absent the case file. And any negative inference was rebutted by the court's own determinations that there was a knowing and voluntary plea. The defendant did not request a sanction for the missing file. The defendant did not subpoena his public defender who was representing him when an 11. And we have the testimony from attorney barrel that there was no eight-year offer. And this testimony was a perfectly acceptable consideration for the court to make in finding the negative inference rebutted. The people also maintain their waiver argument here. This, as we know, plea agreements are governed by the rules of contracts. Therefore, waiver can apply to them. This is a situation where the defendant knew or claimed to know about this alleged offer before he entered the plea. He did not move to withdraw the plea. He knew about this alleged offer when he filed his pro se motion to reconsider sentence and failed to mention it again. And now he's continuing to try to complain about it when it was a fact known to him and could have been addressed. But now we are at a third stage dismissal of an ineffective assistance of counsel claim governed by a manifest weight standard and allowing the trial court to do fact finding and make credibility determinations, which the court did here. The defendant expressly agreed to a 15-year sentence in a knowing and voluntary plea. Thus, in the absence of disproving that no other promises were made to him, the last protection we have in a situation like this where a file has been lost or an attorney is dead or missing, that last protection is that the trial court gets to make the credibility assessments at this hearing. We also have the important posture of an entirely new judge reviewing this claim on remand. So, a second judge is making an independent finding about this claim with no color of bias, having previously dismissed the petition after a third stage hearing. Pardon me, Your Honor. One thing we can look at, too, is the fact that the defendant does not even know the details of this alleged eight-year offer. And then the fact that he ultimately pled guilty to a 15-year offer does not support the tender of an eight-year offer. What we have here is a lot of uncertain vague testimony from the defendant that he wanted counsel to do the best he could, that he then came back and said Hamrock would not go down from a 15-year offer. So, any presentation here seems more in line with Costa actually still engaging in negotiations, that they were hoping to come back with this offer and bringing in this almost a counteroffer to the 15-year offer that was made. The evidentiary hearing here provided the whole public defender when there was a known plea offer that had been made, ASA Hamrock's standard procedure for entering plea negotiations, which included making a written offer, which nobody appeared to see or be able to provide, and the testimony surrounding the alleged eight-year offer. The court properly considered all of this and weighed the evidence and the credibility of the witnesses. The defendant's testimony and his fiance's testimony, number one, they're not independent witnesses. They offered self-serving testimony. The defendant could not identify the terms of this alleged offer. He did not move to withdraw his plea. He, again, he did not mention this in his motion to reconsider a sentence and claims it slipped his mind. If he had, this was something fresh in his mind at the time. If he had been actually made an eight-year offer and then was sentenced to almost twice that, and it slipped your mind not to bring that to the attention of the court, that's a fairly unreasonable testimony that the trial court could reject. Again, a fiance McCoy, also not an independent witness. She also contradicted the defendant's own testimony that this eight-year, alleged eight-year offer was the very first offer he received. She testified that there had been previous talk of a 15-year offer, and she never saw it in writing as well. Hamrock did not recall making an eight-year offer. That does not mean he either did not make it or did make it. He did not recall. However, he usually presented... Yes, yes, you're on. Let me ask about that. Wasn't his testimony, though, that he didn't really recall? Yes, he did not recall. Whether he made it or not? He did not recall. Okay, that's a lot different than saying he didn't recall or he didn't make it. Then we have the double hearsay from the attorney Barrow, I think it was, who said, well, he told me in the hall. What about that? Is that a credibility determination or is that an inadmissible hearsay, double hearsay? It is not an admissible double hearsay, Your Honor, as the rules of evidence provide that hearsay is not subject to post-conviction hearings. It was testimony that could be considered in this hearing that could go to the credibility determinations of Hamrock and the defendant himself. Again, it also supports the fact that Barrow did not address this claim at the earlier hearing as it would not have benefited the to have learned that there was no eight-year offer at that time. Thank you. Were there any other questions about that? Justice Barbas? No. Thank you. Thank you, Your Honors. Mr. Mungus? Yes, thank you. Just briefly, this court should reject the state's appeal to standard operating procedure. Standard operating procedure includes keeping trial files while litigation goes on for years and years and years from 2013 onward. And standard operating procedure also includes A.S.A. Hamrock's testimony to the court during the hearing that he'd been on numerous remands from the appellate court following mistakes during guilty plea proceedings. Of course, the rules are in place so that these mistakes don't happen, but as A.S.A. Hamrock candidly testified, he's been on the receiving end of mandates from the appellate court. This court fixes errors that have occurred. Now, the state criticizes Mr. Roll for not putting this in his motion to reconsider sentence, but as this court knows full well, this is not a proper issue to be raised in a motion to reconsider the sentence. Indeed, the motion to reconsider sentence was not the proper motion at all to file given the nature of this plea. However, the record also shows that Mr. Roll didn't sit on this claim. He pleaded guilty at the very end of 2012, and in 2013, he filed this petition. This petition, within the petition, this is claim four. This thing has been in front of the circuit court for nearly a decade now. So the state's effort to cast Mr. Roll as sort of sitting back on his rights has no support in the record. Further, it has no support in case law. It wasn't until 2012 where the U.S. Supreme Court made clear in Missouri v. Frye that a lapse plea offer is a type of claim that supports an ineffective assistance of counsel finding. Now, that's exactly what we have here, and in 2013, we have Mr. Roll raising this claim. Is the appellant required, though, to file a motion to withdraw his guilty plea before he can move on this? Oh, absolutely not. The Post-Conviction Hearing Act and the, you know, proceedings following the plea are entirely separate. The state has cited no case law in mere suggestion that Mr. Roll needed to file such a motion, and there's good reason for that. The Post-Conviction Hearing Act protects petitioners above and beyond what the Supreme Court rules offer, and that Mr. Roll filed this claim so quickly after the plea hearing, in fact, supports his testimony and Lisa McCoy's testimony that he'd accepted an eight-year plea offer about two months before the plea hearing when talking to counsel off the record. Well, what about the state's argument that you just made regarding his lack of remembering that he had been made an eight-year offer and everything involved with that? So, I understand you're honored to be asking, you know, why didn't Mr. Roll know more details about the nature of the witnesses because a decade had passed. So, A.S.A. Hamrock himself, even though he'd just read the plea transcript, couldn't recall the offense class, the unique sentencing range, the percentage of time served, or even the amount of controlled substance at issue. Your client, the appellant, though, stated that at the time that he entered his guilty plea, when everything was fresh in everyone's mind and the record was in front of the court, that he had just, it slipped his mind that he had been offered an eight-year sentence. Yeah, and I think to a non-lawyer, even to lawyers, that's what I brought up Missouri v. Frye. The nature of this violation became quite clear in 2012 when the U.S. Supreme Court decided Missouri v. Frye that Mr. Roll, while sitting in the hearing where he's not allowed to talk and while in prison, you know, doing his best to do research within a prison library, wouldn't know to bring this exact claim through a motion to consistent and unfortunate. And I think it's good that the Post-Conviction Hearing Act exists because that a little bit of extra time allowed Mr. Roll to no longer sit back on this issue, to file this petition and bring this finally in front of the court. So if your honors have no further questions, I would just like to again stress that Mr. Roll has done all that he can over this last decade to try to bring this issue before the court. Numerous errors below, engendered entirely by the state, have struck directly at the integrity of these proceedings. Between the direct evidence and the circumstantial evidence offered on this record and before the circuit court, the circuit court's decision should have been just one, namely granting Mr. Roll relief. So we ask that this court reverse the denial, vacate his conviction, and remand so the state can re-offer him a term of eight years imprisonment. Thank you. Justice Cates, any questions? No, thank you. Justice Barberis? No, nothing. Thank you. We'll take this under advisement and we'll hear what's what. Thank you.